# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

In Re:  **CAMERON WILLIAM SHIFFLETT,**
        **Debtor**

**PIONEER BANK,**
        **Movant**

**v.**
                                  **Case No:  20-60980**
                                  **CHAPTER 13 BANKRUPTCY**

**CAMERON WILLIAM SHIFFLETT,**
        **Respondent**

**and**

**HERBERT L. BESKIN,**

        **Trustee**

### MOTION FOR RELIEF FROM STAY

The Plaintiff, Pioneer Bank, by counsel, hereby moves for relief from the stay imposed by 11 U. S. C. §362 in the manner hereinafter requested, and in support of its motion states as follows:

1.      The Debtor and Defendant, Cameron William Shifflett, (the "Debtor") filed a petition in Chapter 13 in this Court on July 2, 2020 (the "Petition").

2.      The Defendant Herbert L. Beskin was duly appointed Chapter 13 Trustee.

3.      The Debtor's Plan, confirmed on October 23, 2020, required payments of $1,184.00 via automatic payment beginning October 1, 2020.

4.      As of August 18, 2022, the Debtor, Cameron William Shifflett, was indebted to Pioneer Bank in the amount of $156,162.68 under the terms and provisions of a note, dated

LAW OFFICES
**REED & REED, P.C.**
LURAY, VIRGINIA

June 28, 2016, payable to the order of Pioneer Bank, in the original principal amount of

$169,500.00 ("Note").  A copy of the Note is attached hereto as Exhibit A.

5.     The last payment received by Pioneer was the payment for August 1, 2022.

The debtor is past due for 8 payments.

6.     The Note is secured by a deed of trust in favor of Pioneer Bank in ("The

Property").  A copy of the deed of trust is attached hereto as Exhibit B.

7.     The Debtor is in default under the Note for failure to pay the Note as and when

due.  As of August 18, 2022, there was $156,162.68 due and owing under the Note.  The Note

has been past due for 8 months.  A copy of the statement of account is attached hereto as

Exhibit C.

8.      Cause exists to warrant the lifting of the stay, and Pioneer Bank is not

adequately protected.

**WHEREFORE,** Pioneer Bank respectfully requests that an order be entered

terminating the stay as to the Debtor's interest in the real property known as 736 Jonquil

Road, Ruckersville, Virginia 22968, located in Ruckersville Magisterial District, Greene

County, Virginia and described as follows:

0.9903 acres, Lot 15, Section O, Twin Lakes, on a plat of survey made by R. M.

Bartenstein & Associates recorded in the Clerks; Office of the Circuit Court of Greene

County, Virginia in Plat Book 3 at Page 69.

and apply the sale proceeds to the debt and for all other necessary relief.

**Respectfully submitted,**
**PIONEER BANK**
**By Counsel**

Counsel:

/S/Nancy M. Reed
**REED & REED, P.C.**
**VSB No: 24229**
Attorneys and Counsellors at Law
P.O. Box 766
16 South Court St.
Luray, Virginia 22835
(540)743-5119
(540)743-4806 fax
E-mail: nreed@reedandreedlaw.com
**Counsel for Pioneer Bank**



**EXHIBIT**

**A**

871525

**June 28, 2016**

### ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$169,500.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Pioneer Bank. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at an initial yearly rate of **4.95%**. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 6 of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of every month beginning on August 1, 2016. I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on the 1st day of July, 2046, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at **Pioneer Bank, P.O. Box 10, Stanley, Virginia, 22851**, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payment**

Each of my initial monthly principal and interests payments will be in the amount of $904.74. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on August 1, 2021, and every sixty (60) months

Page 1 of 4

thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on US Treasury Securities adjusted to a constant maturity of five (5) year(s) and made available by the Federal Reserve Board. The most recent index available as of the date 45 days before each change date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.75% percentage points to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate that I am required to pay will not be greater than **10.95%** per annum (**ceiling**) or less than **4.95% per annum (floor)**, regardless of the current index. However, my interest rate will never increase or decrease more than **two percentage (2%) points** on any one change date, regardless of this current index.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

If the Lender has not received the full amount of any payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Lender.  The amount of the charge will be five (5) percent of my overdue payment.  I will pay this late charge promptly but only once on each late payment.

If I do not pay the full amount of each payment on the date it is due, I will be in default. If I am in default, the Lender may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Lender may accelerate the maturity date of the note and require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, that date must be least fifteen (15) days after the date on which the notice is delivered or mailed to me.

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

The makers, endorsers, sureties, guarantors and all other parties now or hereafter personally liable for the indebtedness hereby evidenced jointly and severally agree to pay the costs of collection and reasonable attorneys' fees of not less than fifteen (15%) percent of all sums due, provided that this note be placed in the hands of an attorney and is collected without suit; and to pay in the event action be instituted on this note, the costs and expenses of such action, including such sums as the Court may fix as attorneys' fees, which sum shall be not less than fifteen (15%) percent of the sum due on the note.

**7.    WAIVERS**

Each and every maker, endorser, surety and guarantor waives the benefit of all exemptions, homestead or otherwise, under the laws of this and any other State, and agrees to pay the same without any offset whatsoever. They further waive the rights of presentment and notice of dishonor.

**8.    COLLATERAL AND TRANSFER OF SECURITY**

This note is secured by a credit line deed of trust dated the **June 28, 2016** to **Reed & Reed, P.C., Attorneys and Counsellors at Law, a Virginia professional corporation,** Trustee, covering real estate situate in Greene County, Virginia.  If any of the real estate covered by said Deed of Trust is sold or transferred without the Lender's prior written consent, or upon the death of either Borrower, then in either event, Lender at its option may accelerate this note and demand immediate payment in full of all outstanding principal and accrued interest.

WITNESS THE FOLLOWING SIGNATURE AND SEAL:


_____(SEAL)
**CAMERON WILLIAM SHIFFLETT**

**COMMONWEALTH OF VIRGINIA,**
**COUNTY/CITY OF** _Greene Co._ **, TO-WIT:**

The foregoing adjustable rate note was acknowledged before me this _28_ day of _June_ ,
2016, by CAMERON WILLIAM SHIFFLETT.

My commission expires: _3-31-2018_ .
My registration no. is: _7019691_ .

_Doris Richard Gray_
Notary Public



Page 4 of 4

001458

EXHIBIT

B

*This document was prepared by Mark N. Reed (VSB#23251)*
*VA Code §17.1-223: First American Title Insurance Company is the underwriter of this instrument*
*Tax Map No. 49A-1-O-15*

# CREDIT LINE DEED OF TRUST

**THIS CREDIT LINE DEED OF TRUST** is made this 28th day of June, 2016 by and between **CAMERON WILLIAM SHIFFLETT** and **CRYSTAL MICHELLE MORRIS**, herein referred to as the "Grantor," and **REED & REED, P.C., Attorneys and Counsellors at Law**, a Virginia professional corporation, whose address is 16 South Court Street, Luray, Virginia, 22835, herein referred to as "Trustee."

## THIS IS A CREDIT LINE DEED OF TRUST.

**Purpose.** **Pioneer Bank**, herein called the "Bank", intends to extend, or has already extended, credit to one or more Grantors, or to such other person(s) as may be named herein, in varying amounts and from time to time upon such conditions as the Bank may impose, and the Grantor desires to secure to the Bank the payment of all such extensions of credit up to an aggregate principal sum hereinafter specified, plus interest thereon and any other obligations related thereto or otherwise specified herein. Inquiries should be directed to: **Pioneer Bank, Attn: Credit Dept., P.O. Box 10, Stanley, Virginia 22851.**

**Property Conveyed.** For value received and in consideration of the trusts set out herein, Grantor hereby grants and conveys unto the Trustee, in trust, with general warranty and English Covenants of title the following described real estate, located in the Ruckersville Magisterial District of Greene County, Virginia, containing 0.9903 acres, more or less, being more particularly described as Lot 15, Section O, Twin Lakes, on a plat of survey made by r. M. Bartenstein & Associates recorded in the Clerk's Office of the Circuit Court of Greene County, Virginia, ("Clerk's Office") in Plat Book 3 at page 69, and being the same real estate which was conveyed to Cameron William Shifflett and Crystal Michelle Morris by Darryl Cooper and Regina Cooper, by deed dated June 27th, 2016, and recorded in the Clerk's Office immediately prior to the recording of this deed of trust, to which plat and deed references are hereby made.

Together with all the buildings and improvements now and hereafter erected on the real estate and all easements, rights, appurtenances, rents, royalties, timber, mineral, oil and gas rights and profits and all fixtures now or hereafter attached to the real estate, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said real estate are referred to in this Deed of Trust as the "Property". As additional security, the Grantor hereby assigns to the Bank (1) all condemnation proceeds and proceeds of any policy of insurance due in connection with the Property and (2) if any of the Property is leased or any easement thereon or right to remove any portion of the Property has been or is at any time granted (either now or in the future and whether with or without the consent of the Bank or the Trustee), the lease, other instrument, agreement or contract right and all rights thereunder and any and all rents, royalties, income and other accruing benefits related thereto; and all such shall be included in the term "Property".

**Secured Obligations.** The property is conveyed in trust to secure the following obligations, which shall sometimes be referred to herein as "secured obligations".

    **a.**     **Obligations of Grantor.** Except as otherwise limited by the next section of this Deed of Trust entitled "Limitations", the Property is conveyed to secure payment of all obligations of Cameron William Shifflett, one of the *Grantors*, that are owed to the Bank for any reason both now and at any time in the future, regardless of the amount, whether matured or unmatured, absolute or contingent and

BOOK 1503 PAGE 161             Page 1 of 8



Doc ID: 000418320003 Type: DEE
Kind: DEED OF TRUST, CREDIT LINE
Recorded: 06/28/2016 at 03:01:00 PM
Page 1 of 8
Greene Co VA Circuit Court
Clerk of Circuit Court Clerk
Book 1503 Page 161 - 168
File 2016-00001458

however evidenced.  This includes but is not limited to: (1) future loans and advances made at the Bank's option (even if not currently contemplated and even if made after all current obligations have been repaid); and (2) all obligations to Bank now existing or later incurred whether owing originally to Bank or purchased by the Bank from a third party.

     **b.**     **The latest date on which any extension of credit secured hereunder is or may be scheduled to mature is thirty-one years from the date of this Deed of Trust.**

     **c.**     The Property shall also secure reimbursement to the Bank and the Trustee for any and all costs, attorney's fees and other expenses of whatever kind incurred by the Trustee or the Bank in connection with (i) obtaining possession of the Property, (ii) the protection and preservation of the Property, (iii) the collection of any sum or sums secured hereby, (iv) any litigation involving the Property, or this Deed of Trust, or any benefit accruing by virtue of the provisions hereof or the rights of the Trustee or the Bank hereunder, (v) the presentation of any claim under any administrative or other proceeding in which proof of claim is required by law to be filed, (vi) recording or releasing this Deed of Trust and any additional examination of the title to the Property or execution and recording of further assurances or any physical survey of the Property which may be required by the Trustee or the Bank for any reason in good faith, or (vii) taking any steps whatsoever in enforcing this Deed of Trust, claiming any benefit accruing by virtue of the provisions hereof or exercising their rights hereunder; all of which costs and expenses shall be the obligations of and be paid by the Grantor.

**Limitations.**

     **a.**     The aggregate amount of the obligations to which the Property may be subjected for payment may not exceed the sum of (1) extensions of credit in the aggregate principal amount outstanding of **ONE HUNDRED SIXTY-NINE THOUSAND FIVE HUNDRED DOLLARS ($169,500.00)** plus (2) interest and charges thereon, plus (3) all actually incurred costs and expenses of the Trustee or the Bank as provided for in this Deed of Trust or in any agreement evidencing, relating to or associated with any extension of credit.  This limitation on the amount of the obligations to which the Property may be subjected shall not be construed to either (i) create any responsibility on the Bank to inform the Grantor of the aggregate obligations of any person whose obligations are secured, in whole or in part, by the Property or (ii) limit or restrict in any way the aggregate amount of credit or direct or contingent liability which the Bank may extend to, or allow to be incurred by, any one or more persons.  As used in this Deed of Trust, the term "extension of credit" shall include, but not be limited to, loans, lines of credit, checks and other items accepted for collection and for which value has been given, overdrafts, letters of credit, guarantees, and commitments to extend credit.  The term "obligations" is used in it broadest sense to include, but not be limited to, extensions of credit, interest, charges, costs, duties of performance and indebtedness of any kind or source.

     **b.**     If the writing which evidences an extension of credit (1) is executed after the date of this Deed of Trust and (2) specifically states that the extension of credit is unsecured or that there is no collateral, that extension of credit and the obligations related thereto shall not be secured by the Property under this Deed of Trust.

     **c.**     Notwithstanding any other language in this Deed of Trust, any consumer credit obligation, as defined under the federal Truth in Lending Act and applicable implementing regulations, or a Grantor or other person named above, will be secured by the Property under this Deed of Trust only if (i) this Deed of Trust or the Property is specifically mentioned in a writing which evidences the obligation or in a disclosure statement, commitment letter or other agreement related to that obligation, or (ii) the obligation to be secured is identified in the section of this Deed of Trust entitled "Secured Obligations".

**General Warranties and Covenants.**  Except as specifically modified elsewhere under the terms of this Deed of Trust, the Grantor covenants, and this Deed of Trust shall be construed to impose and confer upon the parties hereto and the beneficiaries hereunder, all warranties, duties, rights and obligations prescribed in Sections 55-59 and 55-70 through 55-74 inclusive of the Code of Virginia of 1950, as amended.  Grantor further covenants that the Grantor and any lessee of the Property will comply with all

BOOK 1503 PAGE 162

laws and ordinances. Grantor and the Bank covenant and agree as follows:

   a.   **Obligations Secured.**  This Deed of Trust is intended to secure existing and future obligations which arise and are repaid from time to time on differing dates and for differing amounts and for differing purposes, provided the obligation meets the descriptive requirements for a secured obligation as set forth above.  No identification by signature of any Trustee shall be required beyond that which is set forth above, if any.  The secured obligations shall be performed and repaid in accordance with the terms, charges and rates of interest stated in the terms, instruments or other agreements underlying each such obligation, including any loan agreement or commitment related thereto.

   b.   **Application of Payment and Proceeds.**  The Bank shall not be required to in any way apportion among the obligations secured hereunder any funds or monies received from any source, including those received from the disposition of the Property.  Funds received from or with respect to any person obligated to the Bank may be applied to pay any obligation of such person (whether secured hereunder or not) in such amount, manner and sequence as the Bank may determine to be in its own best interest.  Proceeds of the disposition of any property which secures an obligation also secured under this Deed of Trust may be applied by the Bank in whole or in part to the payment of any obligation secured by such property.  Any monies received from any Grantor may, but need not, be first applied to meet any escrow requirement as provided under section 5 below and/or to the payment of any amount which may result in a lien which would have priority over the Bank's interest in the Property.  If any obligation secured hereunder is contingent, or not liquidated, or not matured, or not declared in default at the time or receipt of any monies as proceeds or in settlement of (a) any policy of insurance on the Property or (b) disposition or rental of the Property after default or (c) condemnation or taking of the Property, at the Bank's discretion after paying any matured obligations, costs, charges, fees or other expenses, the Bank or the Trustee shall be entitled to hold in escrow so much of the balance of such monies as the Bank in good faith believes necessary to fully secure the repayment of the maximum potential amount of such obligations as estimated from time to time by the Bank in good faith.  If the Grantor is not personally liable for the repayment of such obligations, the Bank will pay interest on such escrow amount at a rate not to exceed that currently being paid by the Bank on regular statement savings accounts for which no maturity or notice period is required.

   c.   **Hazard Insurance.**  Grantor shall keep the improvements now existing or hereafter erected on the Property and any marketable timber or crops growing on the Property insured against loss of fire, hazards included within the term "extended coverage", and such other risks as Bank may require.  The insurance coverage shall be in such amounts and for such periods as the Bank may require, and shall, in any event, be in an amount sufficient to prevent Grantor from becoming a co-insurer as to such insurance.  All insurance policies and renewals must: (a) contain a standard mortgage clause in favor of the Bank; (b) provide for at least 30 days prior notice of cancellation to the Bank; (c) be with a company acceptable to the Bank; and (d) be in a form and contain terms satisfactory to the Bank.  Grantor shall promptly provide to the Bank the original of any policy or renewal or replacement policy (which will be held by the Bank) and shall provide Bank with other evidence of insurance upon request.  If Grantor fails to maintain such insurance or fails to provide evidence of such insurance in a timely fashion, Bank may, but need not, obtain such insurance protecting either (a) the interest of both the Bank and the Grantor or (b) the interest of the Bank only.  The Bank may obtain the insurance in any form and amount and with any insurance carrier the Bank chooses.  The Grantor shall reimburse the Bank for the actual cost of the insurance immediately upon demand.  In the event of loss, Grantor shall give prompt notice to the insurance carrier and Bank.  Bank may make proof of loss if not made promptly by Grantor.  The proceeds of any insurance paid for any reason whatever shall, to the extent of the obligations secured by the Property then remaining unpaid, including contingent obligations and outstanding commitments by the Bank to extend credit which could or would be secured under this Deed of Trust be paid to the Bank.  Unless Bank otherwise agrees, the proceeds of any insurance will be applied to the obligations secured hereunder in accordance with the directions of the Bank and as provided in section 2.  If the Property is abandoned by Grantor, or if Grantor fails to respond to Bank within 20 days from the date notice is mailed by Bank to Grantor that the insurance carrier offers to settle a claim for insurance benefits, Bank is

BOOK 1503 PAGE 160

authorized to settle the claim on behalf of Grantor on such terms as the Bank determines to be in its own best interest and to collect and apply the insurance proceeds at Bank's option either to restore or repair the Property or to pay any secured obligation. In the event of foreclosure under this Deed of Trust, all right, title and interest of the Grantor in and to any insurance policies then in force, or any proceeds of insurance policies resulting from damage to the Property prior to foreclosure, or any refund or unearned premium, shall pass to the Bank who may receive on Grantor's behalf the cancellation value or proceeds and may apply the same to the extinguishment of the debt.

     d.     **Taxes, Charges.** Grantor shall pay promptly when due all taxes, assessments, governmental or municipal charges, fines and impositions attributable to the property which may attain priority over this Deed of Trust, (all of which are hereinafter referred to as "taxes"), and leasehold payments, if any. Grantor shall promptly furnish to Bank all notices of amounts due under this paragraph and, unless payment will be made by Bank pursuant to section 5, Grantor shall promptly furnish to Bank receipts evidencing such payments upon request. Grantor shall promptly discharge any taxes which have priority over this Deed of Trust.

     e.     **Funds for Taxes, Insurance and other Charges.** When requested by the Bank, the Grantor shall pay to the Bank on such date or dates as the Bank may specify, and continuing for so long as this Deed of Trust remains unreleased, monthly payments to the Bank equal to one-twelfth of (a) the yearly taxes plus (b) the yearly premium for hazard and other risk insurance required by the Bank plus (c) the yearly premium for mortgage insurance, when required by the Bank, all as reasonably estimated initially and from time to time by the Bank; provided that the Bank may require that the first such payment be in as great amount as necessary to ensure that, when added to the succeeding regular payments, the aggregate amount will be sufficient to pay when due the taxes and insurance. The Bank will hold these funds to pay such premiums and taxes before the same become delinquent, but it is specifically agreed that no interest shall ever be paid to Grantor with respect to these funds. The Bank may, at its option, commingle these funds with other such funds or with its own monies and accounts if an accounting is maintained. Provided (a) all other payments due the Bank are current and (b) no obligation secured hereunder or otherwise owed by the Grantor to the Bank is in default and (c) the Bank considers itself to be secure in the payment of all such obligations, the Bank will apply such funds as have accumulated for the purpose in accordance with the provisions of this Deed of Trust to the payment of such taxes and insurance premiums as bills therefore are properly presented to the Bank and are due. However, the Bank shall not be liable for any loss or damage incurred by the Grantor in connection with any failure of the Bank to pay such taxes or insurance premiums when due, provided the Bank has not acted in bad faith. If the aggregate of these payments received by the Bank prior to the due dates of taxes and insurance premiums is not sufficient to pay the amounts due, Grantor shall pay Bank any amount necessary to make up the deficiency within 30 days after the date a notice is mailed by the Bank to the Grantor requesting payment. Alternatively, the Bank may require Grantor to increase the amount of future payments to pay deficiency.

     f.     **Preservation and the Maintenance of Property.** Grantor shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property. Grantor shall not remove or sell any timber, mineral, oil or gas, or any rights thereto, without the prior written consent of the Bank. Grantor shall comply with the terms of, and perform Grantor's obligations under, each of the following which relate to the property: (i) any policy of insurance, (ii) any lease; (iii) any declarations, covenants, by-laws or regulations creating or governing any condominium, planned unit development or subdivision and (iv) any covenants or restrictions or burdens contained in any deed transferring ownership of the Property to Grantor or otherwise running with the Property.

     g.     **Protection of Bank's Security.** If Grantor fails to perform any covenant or agreement contained in this Deed of Trust or if any action or proceeding is commenced which materially affects the Bank's interest in the Property (including, but not limited to, eminent domain, insolvency, code enforcement, any proceeding under the federal Bankruptcy Code, or any proceeding with respect to a decedent), then Bank, at Bank's option and without notice to Grantor, may make such appearances, disburse such funds and take such action as Bank in good faith determines appropriate to protect the

BOOK 1503 PAGE 164

Bank's interest, including, but not limited to, the disbursement of loan funds to builders, contractors, or materialmen, the payment of taxes or insurance premiums, the discharge of liens or encumbrances against the Property, and entry into or upon the Property, by force or otherwise, to make repairs.

h.     **Inspection.** Bank may make or may cause to be made reasonable entries upon or into the Property from time to time for purposes of inspection. No notice to Grantor shall be necessary unless the Property is improved and actually occupied at the time any such entry or inspection is desired, in which case reasonable notice consistent with protecting the Bank's interest shall be given.

i.     **Condemnation.** The proceeds of any award of or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Bank. After application and/or escrow in accordance with the terms of section 2, the excess, if any, shall be paid to Grantor.

j.     **Release of other Collateral and Securities.** Unless otherwise specified in this Deed of Trust, Grantor hereby authorizes the Bank, in its sole discretion: (i) to release any collateral which secures any obligation secured under this Deed of Trust, (ii) to release or compromise the liability of any person who may be liable in any capacity for the repayment of any obligation secured under this Deed of Trust, other than a person specifically identified as an obligor in subparagraph b of the section of this Deed of Trust entitled "Secured Obligations", and (iii) to fail to enforce the liability, fail to pursue any remedy or fail to take any legal action against any or all persons who may be liable in any capacity for the repayment of any obligation secured under this Deed of Trust, including a person specifically identified as an obligor in subparagraph b of the section of this Deed of Trust entitled "Secured Obligation". The obligations for which the Property may be subjected for payment shall not be credited with the value of any such collateral or with any portion of any debt or liability owed to the Bank by any such person. The Bank shall have no duty to, and shall not be expected to, inform or consult Grantor with respect to any such release, compromise, or failure to enforce a claim either prior to or at any time after such an occurrence.

k.     **Extension of Credit and Renewals.** The Bank may extend credit to any Grantor  or any other person whose obligations are secured hereunder in such amounts, at such times and upon such terms as the Bank in its sole discretion may determine without in any way reducing, limiting or releasing the Bank's security interest in the Property under this Deed of Trust. The Bank may vary the terms of any credit extended, including the rate of interest, renew or extend the time of payment of any obligation without limitation, extend any amount of additional credit or acquire additional obligations of any person at any time without notice to the Grantor or any other person.  Renewals or extensions of time for repayment may be made for any length of time and any number of different times the Bank in its sole discretion may determine.

l.     **Waivers and Forbearance by Bank.** Any waiver by Bank or Trustee will be effective only if in writing and only for the specific purpose and instance granted, and delay in enforcement or requirement of any provision will not be a waiver of or preclude the exercise of any such right or remedy or event of default. Acceptance by the Bank of any payment will not be deemed a waiver of any default (including any failure to make such payment on time) unless the Bank expressly states in writing that the particular event of default is waived.

m.     **Transfer, Sale or Contract of Sale of Property.** Bank may, at Bank's option, declare all obligations of any Grantor which are secured under this Deed of Trust to be immediately due and payable if, without the prior written consent of the Bank all or part of the Property or any interest therein is sold or transferred (including by lease) made the subject of any land contract or other type of conditional sales agreement. Any delay in enforcement of this provision shall not constitute a waiver of the Bank's rights hereunder.  Any grant of an extension of any time period, or written consent to sell, transfer or make subject to any conditional sales agreement shall be effective only for the specific instance (including parties involved) and duration given and shall not apply to any other instance or longer period unless new consent is given by Bank in writing.  If Grantor does not pay all such obligations in full within 30 days after the date on which Bank mails to Grantor a notice of Bank's

exercise of this option by ordinary prepaid mail to the address shown on Bank's records, Bank may declare Grantor's obligations to be in default and Bank shall be entitled to such remedies as are provided in section 16 below or in any agreement underlying any obligation secured hereunder or by applicable law. In the event this paragraph is determined to be void or unenforceable in whole or in part, Bank shall nevertheless be entitled to receive over the remaining term of any obligation of Grantor such higher rate of interest and additional service charge as Bank may require, provided that such higher rate is reasonably commensurate with then current rates imposed by the Bank for similar obligations.

n. **Trustee.** All of the powers and discretion granted to the Trustee under this Deed of Trust, or by law, may be exercised by either Trustee named herein or any successor Trustee, and the Trustee may act through their agents and attorneys. The Bank may substitute or remove any Trustee at any time without cause and, by instrument duly executed and acknowledged, may designate and appoint one or more substitute Trustee in the place and stead of any such Trustee, and the substituted Trustee or Trustee shall thereupon be vested with all powers, rights, authority and duties vested in a Trustee hereunder. The Grantor covenants that: the Trustee may rely upon the oral or written representations of the Bank that an event of default has occurred under the terms of this Deed of Trust; the Trustee shall not be required to ascertain or inquire as to the performance of any covenants or agreements contained herein or in any other agreement underlying or related to an obligation secured hereunder; and all action taken pursuant to such representations and request for foreclosure or other appropriate action as provided herein or by law shall be binding upon the Grantor, the Trustee and those claiming under or through them. Grantor agrees to indemnify and save the Trustee harmless against any loss, liability or expense that they may incur in the exercise and performance of their powers and duties hereunder or as a result of serving as a Trustee hereunder, and not due to their negligence or bad faith.

o. **Event of Default.** Each of the following shall constitute an event of default under this Deed of Trust: (i) any payment with respect to any obligations secured under this Deed of Trust, together with any related late charge, is not paid when due; (ii) an event of default occurs under the terms of any obligations secured under this Deed of Trust; (iii) an event of default occurs under the terms of any other agreement between Grantor and Bank; (iv) any provision, agreement or covenant of this Deed of Trust is not met or performed as provided herein; or (v) any representation or warranty given by or on behalf of the Grantor proves to have been false when given.

p. **Remedies.** If any event of default occurs, the Bank may, without prior notice to any person, declare any one or all obligations secured under this Deed of Trust to be in default and to be immediately due and payable in full. Upon declaration of default: (i) the Bank or the Trustee upon demand of the Bank, by agent or in person, shall be entitled to take immediate possession of the Property, and to enter upon or into the Property with or without force or process of law, and to manage or hire another person to manage the Property, and to collect rents of the Property including those past due, and to rent the Property at such rental and for such term and upon such conditions as the Bank or the Trustee (whomever shall be acting under this section) may deem proper, and to make any commercially reasonable and/or necessary repairs to the Property or to replace all or any part of the same, and apply any rents actually collected as provided below in this section; and (ii) the Trustee upon demand of the Bank, or the Bank, may sell all of any portion of the property and apply the proceeds of such sale or sales as provided below in this section. Any rents collected or other income generated other than by sale of the Property, after paying (i) the costs of collecting rents or other income, (ii) reasonable management fees actually incurred or, if none, a commission of 5% to the Trustee managing the Property and (iii) the costs of any repairs or replacements or any other costs, shall be applied to the payment of the obligation secured hereunder in accordance with section 2. Regardless of where the Property is located, the Trustee will advertise any sale once a week for two (2) consecutive weeks in a newspaper published or having general circulation in a county or city in which the Property or any portion thereof is located. The Trustee may sell the Property or any portion thereof on the eighth day after the first advertisement or any day thereafter not more than thirty (30) days following the last advertisement. Any sale or sales of the Property may be of the Property or of such parts thereof as the Trustee shall deem best. A Bidder's deposit of up to the greater of 10% of the sale price or $1,000.00 may be required. No purchaser

BOOK 1503 PAGE 166

hereunder shall be required to look to the application of the purchase monies. If the Trustees are instructed to sell the Property and, for any reason, the Property is advertised but not sold by the Trustee, the Grantor shall pay to the Trustee all actually incurred costs plus a fee of two and one-half (2 ½%) percent of the amount of the debt incurred by this Deed of Trust, or $500.00 whichever is greater, the payment of which shall also be secured by the Property. If the Trustee sells the Property, he shall deliver to purchaser a Trustee's deed conveying the Property with special warranty of title. The Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including but not limited to a Trustee's fee of five (5%) percent of the gross sale price, or $750.00 whichever is greater, and reasonable attorney's fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured here; and (d) any excess to the person or persons legally entitled to it. The Trustee shall not be required to take possession of the Property prior to sale thereof or to deliver possession of the Property to the purchaser at the sale.

      q.    **Termination of Security.** The Property will not secure payment of new extensions of credit to persons designated by the Grantor after the Credit Department of the home office of the Bank actually receives **WRITTEN** notice of termination from the Grantor. The Grantor shall bear the burden of proof of such actual receipt. Such notice shall not be effective with respect to any commitment made by the Bank prior to receipt of the notice, regardless of the time of performance under the commitment. Nor shall such notice be effective with respect to (1) future obligations arising in connection with existing extensions of credit and (2) any renewal or extension or reacquisition by the Bank of any obligation which existed prior to receipt of the notice, regardless of the number or duration of such renewals or extensions.

      r.    **Other Provisions.** The rights and remedies of the Bank under this Deed of Trust are not exclusive; the Bank will be entitled to and may exercise any other rights or remedies provided under law. The exercise by the Bank of any right or remedy, including the institution of any legal proceeding, shall not foreclose or limit the exercise by the Bank of any other right or remedy, whether before, after or concurrently with any other exercise of right or remedy. All rights of the Bank hereunder will inure to the benefit of its successor and assigns, and all obligations of Grantor hereunder will bind heirs, personal representatives, successors and assigns. Obligations assigned by the Bank to another will not be paid from the proceeds of any disposition of the Property until after the obligations owed to the Bank at the time of assignment (other than the obligation assigned) have been paid in full, regardless of the time any such obligation was incurred.

**NOTICE - THE DEBT SECURED HEREIN IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

      **WITNESS** the following signature and seal.

_____ (SEAL)
**CAMERON WILLIAM SHIFFLETT**

_____ (SEAL)
**CRYSTAL MICHELLE MORRIS**

*Notary page follows:*

*Notary page to deed of trust dated June 28, 2016*

**COMMONWEALTH OF VIRGINIA,**
**COUNTY/CITY OF** _Greene_ **, TO-WIT:**

The foregoing credit line deed of trust was acknowledged before me this 28ᵗʰ day of _June_,
2016 by CAMERON WILLIAM SHIFFLETT.

My commission expires: 3-31-2018 .
My registration no. is: 7019691 .

_Doris Richard Gray_
**Notary Public**

**COMMONWEALTH OF VIRGINIA,**
**COUNTY/CITY OF** _Greene_ **, TO-WIT:**

The foregoing credit line deed of trust was acknowledged before me this 28ᵗʰ day of _June_,
2016 by CRYSTAL MICHELLE MORRIS.

My commission expires: 3-31-2018 .
My registration no. is: 7019691 .

_Doris Richard Gray_
**Notary Public**

Account Inquiry - Consumer RE - FSMP

871525 – Cameron William Shifflett - Consumer RE - FSMP

8/22/2022

## Account

### Account Name and Address

Cameron William Shifflett

736 Jonquil Rd

Ruckersville VA 22968



EXHIBIT C

### Balance Details

| | |
|---|---|
| Original Loan Amount: | $169,500.00 |
| Current Balance: | $156,162.68 |
| Interest Accrued: | $9,122.87 |
| Late Charge Due: | $2,656.91 |
| Other Charges: | $0.00 |
| Accrual Balance: | $154,315.98 |

### Internal

| | |
|---|---|
| Account Number: | 871525 |
| Loan Type: | 20 - Consumer RE - FSMP |
| Officer: | W60CMG - Crystal Gaines NMLS# 1751241 |
| Branch: | 5 - PIONEER BANK-STANARDSVILLE |
| General Ledger Group Code: | 60 - REAL ESTATE LOANS - CONSUMER |

### Payment

| | |
|---|---|
| Payment Amount: | $1,342.09 |
| Principal & Interest Amount: | $904.74 |
| Current Due: | $3,462.20 |
| Escrow Payment Amount: | $437.35 |
| Past Due Amount: | $11,841.79 |
| Total Amount Due: | $13,183.88 |
| Partially Paid Amount: | $0.00 |
| Payment Suspense Amount: | $209.75 |

### Interest

| | |
|---|---|
| Interest Base: | 5 - Interest amortized monthly |
| Interest Rate: | 4.950000 % |
| Daily Accrual: | $20.53387 |
| One Months Interest: | $644.17 |

### Payoff

| | |
|---|---|
| Current Payoff: | $168,228.54 |
| Payoff Good Thru Date: | 08/22/2022 |
| Payoff Pending Flag: | No |
| Next Months Payoff: | $0.00 |

### Collateral

| | |
|---|---|
| Collateral: | 80 - Real Estate - First Lien |
| Collateral Insurance Expiration Date: | |

### LTV Ratio

| | |
|---|---|
| Current PMI LTV Ratio: | 91.80 % |
| Original LTV Ratio: | 100.00 % |

### Payment Details

| | |
|---|---|
| Payment Due Date: | 02/01/2022 |
| Next Scheduled Payment Date: | 09/01/2022 |
| Use Billed Amounts When Splitting Payments: | No |
| Payment Type: | 0 - Scheduled payment includes accrued Int. |
| Payment Frequency (Term): | 1 |
| Payment Frequency (Units): | M - Months |
| Loan Term: | 360 |
| Loan Term (Units): | M - Months |

### Dates

| | |
|---|---|
| Original Loan Date: | 06/28/2016 |
| Last Payment Date: | 08/02/2022 |
| Maturity Date: | 07/01/2046 |
| Next Review Date: | |
| Last Maintenance Date: | 08/15/2022 |

### Maturity Rate

| | |
|---|---|
| Maturity Rate: | 0.000000 % |
| Maturity Rate Grace Days: | 0 |

### Charged Off Details

| | |
|---|---|
| Charged Off Amount: | $0.00 |
| Charged Off Date: | |

PIONEER BANK

Page 1

History

871525 - Cameron William Shifflett -
Consumer RE - FSMP

8/22/2022

| | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | 08/16/2022 | 08/16/2022 | 02/01/2022 | Generated | 804 - Late Charge Assessed | $67.10 | $156,162.68 |
| | 08/02/2022 | 08/02/2022 | 02/01/2022 | Manually Keyed-No Split | 56 - Regular Payment | ($209.75) | $156,162.68 |
| | 08/01/2022 | 08/01/2022 | 12/01/2021 | ACH | 363 - Auto Transfer Credit(ACH) | ($2,100.00) | $156,162.68 |
| | 07/18/2022 | 07/18/2022 | 12/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,680.61 |
| | 07/15/2022 | 07/15/2022 | 12/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($314.63) | $156,680.61 |
| | 07/06/2022 | 07/06/2022 | 12/01/2021 | Manually Keyed-No Split | 2 - Adjust Suspense (-) | $473.56 | $156,680.61 |
| | 06/16/2022 | 06/16/2022 | 12/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,680.61 |
| | 06/02/2022 | 06/02/2022 | 12/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($29.74) | $156,680.61 |
| | 06/02/2022 | 06/02/2022 | 12/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($104.87) | $156,680.61 |
| | 05/16/2022 | 05/16/2022 | 12/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,680.61 |
| 🏠 | 05/10/2022 | 05/10/2022 | 12/01/2021 | Escrow Distribution | 932 - Decrease escrow balance 2 | $834.35 | $156,680.61 |
| | 05/04/2022 | 05/04/2022 | 12/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($89.20) | $156,680.61 |
| | 05/04/2022 | 05/04/2022 | 12/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($314.63) | $156,680.61 |
| | 04/18/2022 | 04/18/2022 | 12/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,680.61 |
| ✉T | 04/12/2022 | 04/12/2022 | 12/01/2021 | Captured from POD | 56 - Regular Payment | ($535.28) | $156,680.61 |
| ✉T | 04/12/2022 | 04/12/2022 | 11/01/2021 | Captured from POD | 56 - Regular Payment | ($864.72) | $156,680.61 |
| | 04/11/2022 | 04/11/2022 | 11/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($59.47) | $156,937.98 |
| | 04/11/2022 | 04/11/2022 | 11/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($209.75) | $156,937.98 |
| | 03/16/2022 | 03/16/2022 | 11/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,937.98 |
| | 03/04/2022 | 03/04/2022 | 11/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($59.47) | $156,937.98 |
| | 03/04/2022 | 03/04/2022 | 11/01/2021 | Manually Keyed-No Split | 41 - Interest Only (-) No Affect on Due Date | ($209.75) | $156,937.98 |
| | 02/16/2022 | 02/16/2022 | 11/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,937.98 |
| | 02/01/2022 | 02/01/2022 | 11/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($59.47) | $156,937.98 |
| | 02/01/2022 | 02/01/2022 | 11/01/2021 | Manually Keyed-No Split | 41 - Interest Only (-) No Affect on Due Date | ($209.75) | $156,937.98 |
| | 01/18/2022 | 01/18/2022 | 11/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,937.98 |
| | 01/07/2022 | 01/07/2022 | 11/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($89.21) | $156,937.98 |
| | 01/07/2022 | 01/07/2022 | 11/01/2021 | Manually Keyed-No Split | 41 - Interest Only (-) No Affect on Due Date | ($314.62) | $156,937.98 |
| | 12/16/2021 | 12/16/2021 | 11/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $156,937.98 |
| | 12/06/2021 | 12/06/2021 | 10/01/2021 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,342.09) | $156,937.98 |
| ✉T | 12/01/2021 | 12/01/2021 | 09/01/2021 | Captured from POD | 56 - Regular Payment | ($84.82) | $157,194.29 |
| | 12/01/2021 | 12/01/2021 | 09/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($29.73) | $157,449.55 |
| | 12/01/2021 | 12/01/2021 | 09/01/2021 | Manually Keyed-No Split | 41 - Interest Only (-) No Affect on Due Date | ($104.88) | $157,449.55 |
| | 11/16/2021 | 11/16/2021 | 09/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $157,449.55 |
| | 11/12/2021 | 11/12/2021 | 09/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($57.27) | $157,449.55 |
| | 11/12/2021 | 11/12/2021 | 09/01/2021 | Manually Keyed-No Split | 41 - Interest Only (-) No Affect on Due Date | ($202.00) | $157,449.55 |
| 🏠 | 10/27/2021 | 10/27/2021 | 09/01/2021 | Escrow Distribution | 932 - Decrease escrow balance 2 | $834.35 | $157,449.55 |
| | 10/18/2021 | 10/18/2021 | 09/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $157,449.55 |

History

871525 - Cameron William Shifflett -
Consumer RE - FSMP

8/22/2022

| | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| T | 09/28/2021 | 09/28/2021 | 09/01/2021 | Captured from POD | 56 - Regular Payment | ($1,200.00) | $157,449.55 |
| | 09/16/2021 | 09/16/2021 | 09/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $157,449.55 |
| T | 08/30/2021 | 08/30/2021 | 08/01/2021 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $157,449.55 |
| | 08/16/2021 | 08/16/2021 | 08/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $157,703.76 |
| | 07/22/2021 | 07/22/2021 | 07/01/2021 | Manually Keyed-No Split | 56 - Regular Payment | ($1.31) | $157,703.76 |
| | 07/22/2021 | 07/22/2021 | 07/01/2021 | Manually Keyed-No Split | 43 - Advance/Balance Increase (+) | $1.31 | $157,956.93 |
| | 07/21/2021 | 07/21/2021 | 07/01/2021 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,200.00) | $157,955.62 |
| | 07/16/2021 | 07/16/2021 | 07/01/2021 | Generated | 804 - Late Charge Assessed | $67.10 | $157,955.62 |
| T | 06/09/2021 | 06/09/2021 | 06/01/2021 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $157,955.62 |
| T | 06/09/2021 | 06/09/2021 | 06/01/2021 | Captured from POD | 40 - Late Charge Payment (-) | ($0.69) | $158,207.75 |
| 🏠 | 05/19/2021 | 05/19/2021 | 06/01/2021 | Escrow Distribution | 931 - Decrease escrow balance 1 | $1,507.00 | $158,207.75 |
| 🏠 | 05/17/2021 | 05/17/2021 | 06/01/2021 | Escrow Distribution | 932 - Decrease escrow balance 2 | $834.35 | $158,207.75 |
| T | 05/10/2021 | 05/10/2021 | 06/01/2021 | Captured from POD | 59 - Principal Only (-) No Affect Due Date | ($0.69) | $158,207.75 |
| T | 05/10/2021 | 05/10/2021 | 05/01/2021 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $158,208.44 |
| T | 04/12/2021 | 04/12/2021 | 04/01/2021 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $158,459.53 |
| T | 04/12/2021 | 04/12/2021 | 04/01/2021 | Captured from POD | 40 - Late Charge Payment (-) | ($0.69) | $158,709.59 |
| T | 03/08/2021 | 03/08/2021 | 03/01/2021 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $158,709.59 |
| T | 03/08/2021 | 03/08/2021 | 03/01/2021 | Captured from POD | 40 - Late Charge Payment (-) | ($0.69) | $158,958.63 |
| T | 02/09/2021 | 02/09/2021 | 03/01/2021 | Captured from POD | 59 - Principal Only (-) No Affect Due Date | ($0.69) | $158,958.63 |
| T | 02/09/2021 | 02/09/2021 | 02/01/2021 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $158,959.32 |
| T | 01/11/2021 | 01/11/2021 | 02/01/2021 | Captured from POD | 59 - Principal Only (-) No Affect Due Date | ($0.69) | $159,207.33 |
| T | 01/11/2021 | 01/11/2021 | 01/01/2021 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $159,208.02 |
| T | 12/07/2020 | 12/07/2020 | 12/01/2020 | Captured from POD | 56 - Regular Payment | ($1,200.62) | $159,455.01 |
| T | 12/07/2020 | 12/07/2020 | 12/01/2020 | Captured from POD | 40 - Late Charge Payment (-) | ($1.38) | $159,700.98 |
| | 11/19/2020 | 11/19/2020 | 12/01/2020 | Manually Keyed-No Split | 25 - Adjust/Waive Late Charges | ($5.06) | $159,700.98 |
| | 11/19/2020 | 11/19/2020 | 12/01/2020 | Manually Keyed-No Split | 25 - Adjust/Waive Late Charges | ($60.07) | $159,700.98 |
| | 11/19/2020 | 11/19/2020 | 12/01/2020 | Manually Keyed-No Split | 25 - Adjust/Waive Late Charges | ($55.01) | $159,700.98 |
| | 11/16/2020 | 11/16/2020 | 04/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $159,700.98 |
| T | 11/09/2020 | 11/09/2020 | 04/01/2020 | Captured from POD | 56 - Regular Payment | ($0.69) | $159,700.98 |
| T | 11/09/2020 | 11/09/2020 | 03/01/2020 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $159,700.98 |
| 🏠 | 10/21/2020 | 10/21/2020 | 03/01/2020 | Escrow Distribution | 932 - Decrease escrow balance 2 | $714.22 | $159,945.94 |
| | 10/16/2020 | 10/16/2020 | 03/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $159,945.94 |
| T | 10/06/2020 | 10/06/2020 | 02/01/2020 | Captured from POD | 56 - Regular Payment | ($1,201.31) | $159,945.94 |
| T | 10/06/2020 | 10/06/2020 | 02/01/2020 | Captured from POD | 40 - Late Charge Payment (-) | ($0.69) | $160,189.90 |
| | 09/16/2020 | 09/16/2020 | 02/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $160,189.90 |
| | 08/17/2020 | 08/17/2020 | 02/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $160,189.90 |
| | 07/16/2020 | 07/16/2020 | 02/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $160,189.90 |

History

871525 - Cameron William Shifflett -
Consumer RE - FSMP

8/22/2022

| | | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| | | 06/16/2020 | 06/16/2020 | 02/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $160,189.90 |
| | 🏠 | 05/28/2020 | 05/28/2020 | 02/01/2020 | Escrow Distribution | 931 - Decrease escrow balance 1 | $1,507.00 | $160,189.90 |
| | | 05/18/2020 | 05/18/2020 | 02/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $160,189.90 |
| | 🏠 | 05/15/2020 | 05/15/2020 | 02/01/2020 | Escrow Distribution | 932 - Decrease escrow balance 2 | $714.22 | $160,189.90 |
| | | 04/16/2020 | 04/16/2020 | 02/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $160,189.90 |
| | | 03/16/2020 | 03/16/2020 | 02/01/2020 | Generated | 804 - Late Charge Assessed | $60.07 | $160,189.90 |
| | | 02/28/2020 | 02/28/2020 | 01/01/2020 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $160,189.90 |
| | | 02/27/2020 | 02/27/2020 | 12/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $160,432.85 |
| | | 02/18/2020 | 02/18/2020 | 12/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $160,674.81 |
| | | 02/07/2020 | 02/03/2020 | 12/01/2019 | Reversals | 932 - Decrease escrow balance 2 | $151.53 | $160,674.81 |
| | | 02/07/2020 | 02/03/2020 | 12/01/2019 | Reversals | 931 - Decrease escrow balance 1 | $145.04 | $160,674.81 |
| | 📧 T | 02/07/2020 | 02/07/2020 | 01/01/2020 | Captured from POD | 43 - Advance/Balance Increase (+) | $40.00 | $160,674.81 |
| | | 02/07/2020 | 02/03/2020 | 12/01/2019 | Reversals | 960 - Generated Principal Reversal | $242.12 | $160,634.81 |
| | | 02/07/2020 | 02/03/2020 | 12/01/2019 | Reversals | 922 - Interest Payment Reversal | $662.62 | $160,392.69 |
| | | 02/03/2020 | 02/03/2020 | 12/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $160,392.69 |
| | | 01/16/2020 | 01/16/2020 | 12/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $160,634.81 |
| | | 01/06/2020 | 01/06/2020 | 11/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $160,634.81 |
| | | 12/27/2019 | 12/20/2019 | 11/01/2019 | Reversals | 932 - Decrease escrow balance 2 | $151.53 | $160,875.94 |
| | | 12/27/2019 | 12/20/2019 | 11/01/2019 | Reversals | 931 - Decrease escrow balance 1 | $145.04 | $160,875.94 |
| | 📧 T | 12/27/2019 | 12/27/2019 | 12/01/2019 | Captured from POD | 43 - Advance/Balance Increase (+) | $40.00 | $160,875.94 |
| | | 12/27/2019 | 12/20/2019 | 11/01/2019 | Reversals | 960 - Generated Principal Reversal | $241.29 | $160,835.94 |
| | | 12/27/2019 | 12/20/2019 | 11/01/2019 | Reversals | 922 - Interest Payment Reversal | $663.45 | $160,594.65 |
| | | 12/20/2019 | 12/20/2019 | 11/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $160,594.65 |
| | | 12/16/2019 | 12/16/2019 | 11/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $160,835.94 |
| | | 11/29/2019 | 11/29/2019 | 10/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $160,835.94 |
| | | 11/18/2019 | 11/18/2019 | 10/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $161,076.24 |
| | 🏠 | 11/15/2019 | 11/15/2019 | 10/01/2019 | Escrow Distribution | 932 - Decrease escrow balance 2 | $714.22 | $161,076.24 |
| | | 10/16/2019 | 10/16/2019 | 10/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $161,076.24 |
| | | 10/01/2019 | 10/01/2019 | 09/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $161,076.24 |
| | | 09/16/2019 | 09/16/2019 | 09/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $161,315.55 |
| | | 09/03/2019 | 09/03/2019 | 08/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,201.31) | $161,315.55 |
| | | 08/16/2019 | 08/16/2019 | 08/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $161,553.88 |
| | | 07/22/2019 | 07/22/2019 | 07/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,100.26) | $161,553.88 |
| | | 07/16/2019 | 07/16/2019 | 07/01/2019 | Generated | 804 - Late Charge Assessed | $60.07 | $161,791.23 |
| | | 06/28/2019 | 06/28/2019 | 06/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,100.26) | $161,791.23 |
| | | 06/21/2019 | 06/21/2019 | 05/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,100.26) | $162,027.61 |
| | | 06/19/2019 | 06/18/2019 | 05/01/2019 | Reversals | 924 - Principal Debit Reversal | ($40.00) | $162,263.02 |

History

871525 - Cameron William Shifflett -
Consumer RE - FSMP

8/22/2022

| | | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| | | 06/19/2019 | 06/19/2019 | 05/01/2019 | Reversals | 918 - Generated Accrual Adjustment | ($0.01) | $162,303.02 |
| | | 06/18/2019 | 06/14/2019 | 05/01/2019 | Reversals | 932 - Decrease escrow balance 2 | $119.87 | $162,303.02 |
| | | 06/18/2019 | 06/14/2019 | 05/01/2019 | Reversals | 931 - Decrease escrow balance 1 | $75.65 | $162,303.02 |
| ✉ T | | 06/18/2019 | 06/18/2019 | 05/01/2019 | Captured from POD | 43 - Advance/Balance Increase (+) | $40.00 | $162,303.02 |
| | | 06/18/2019 | 06/14/2019 | 05/01/2019 | Reversals | 960 - Generated Principal Reversal | $235.41 | $162,263.02 |
| | | 06/18/2019 | 06/14/2019 | 05/01/2019 | Reversals | 922 - Interest Payment Reversal | $669.33 | $162,027.61 |
| | | 06/17/2019 | 06/17/2019 | 06/01/2019 | Generated | 804 - Late Charge Assessed | $55.01 | $162,027.61 |
| | | 06/14/2019 | 06/14/2019 | 05/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,100.26) | $162,027.61 |
| | | 06/11/2019 | 06/07/2019 | 05/01/2019 | Reversals | 932 - Decrease escrow balance 2 | $119.87 | $162,263.02 |
| | | 06/11/2019 | 06/07/2019 | 05/01/2019 | Reversals | 931 - Decrease escrow balance 1 | $75.65 | $162,263.02 |
| ✉ T | | 06/11/2019 | 06/11/2019 | 05/01/2019 | Captured from POD | 43 - Advance/Balance Increase (+) | $40.00 | $162,263.02 |
| | | 06/11/2019 | 06/07/2019 | 05/01/2019 | Reversals | 960 - Generated Principal Reversal | $235.57 | $162,223.02 |
| | | 06/11/2019 | 06/07/2019 | 05/01/2019 | Reversals | 922 - Interest Payment Reversal | $669.17 | $161,987.45 |
| | | 06/07/2019 | 06/07/2019 | 05/01/2019 | ACH | 363 - Auto Transfer Credit(ACH) | ($1,100.26) | $161,987.45 |
| 🏠 | | 05/24/2019 | 05/24/2019 | 05/01/2019 | Escrow Distribution | 932 - Decrease escrow balance 2 | $714.22 | $162,223.02 |
| 🏠 | | 05/21/2019 | 05/21/2019 | 05/01/2019 | Escrow Distribution | 931 - Decrease escrow balance 1 | $1,367.00 | $162,223.02 |
| | | 05/16/2019 | 05/16/2019 | 05/01/2019 | Generated | 804 - Late Charge Assessed | $55.01 | $162,223.02 |
| ✉ T | | 04/09/2019 | 04/09/2019 | 04/01/2019 | Captured from POD | 56 - Regular Payment | ($1,100.26) | $162,223.02 |
| ✉ T | | 03/01/2019 | 03/01/2019 | 03/01/2019 | Captured from POD | 56 - Regular Payment | ($1,100.26) | $162,457.62 |
| ✉ T | | 03/01/2019 | 03/01/2019 | 03/01/2019 | Captured from POD | 40 - Late Charge Payment (-) | ($15.06) | $162,691.26 |
| ✉ T | | 03/01/2019 | 03/01/2019 | 03/01/2019 | Captured from POD | 40 - Late Charge Payment (-) | ($14.68) | $162,691.26 |
| ✉ T | | 02/27/2019 | 02/27/2019 | 12/01/2018 | Captured from POD | 56 - Regular Payment | ($3,500.00) | $162,691.26 |
| | | 02/19/2019 | 02/19/2019 | 12/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $163,386.43 |
| | | 01/16/2019 | 01/16/2019 | 12/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $163,386.43 |
| ✉ T | | 12/27/2018 | 12/27/2018 | 11/01/2018 | Captured from POD | 56 - Regular Payment | ($1,100.26) | $163,386.43 |
| | | 12/17/2018 | 12/17/2018 | 11/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $163,616.25 |
| 🏠 | | 11/28/2018 | 11/28/2018 | 11/01/2018 | Escrow Distribution | 932 - Decrease escrow balance 2 | $655.27 | $163,616.25 |
| | | 11/16/2018 | 11/16/2018 | 11/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $163,616.25 |
| ✉ T | | 10/29/2018 | 10/29/2018 | 10/01/2018 | Captured from POD | 56 - Regular Payment | ($1,100.26) | $163,616.25 |
| | | 10/16/2018 | 10/16/2018 | 10/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $163,845.13 |
| ✉ T | | 10/15/2018 | 10/15/2018 | 09/01/2018 | Captured from POD | 56 - Regular Payment | ($1,100.26) | $163,845.13 |
| ✉ T | | 09/28/2018 | 09/28/2018 | 08/01/2018 | Captured from POD | 56 - Regular Payment | ($1,100.26) | $164,073.07 |
| | | 09/17/2018 | 09/17/2018 | 08/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $164,300.07 |
| ✉ T | | 08/31/2018 | 08/31/2018 | 07/01/2018 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $164,300.07 |
| ✉ T | | 08/31/2018 | 08/31/2018 | 07/01/2018 | Captured from POD | 40 - Late Charge Payment (-) | ($0.51) | $164,526.14 |
| | | 08/16/2018 | 08/16/2018 | 07/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $164,526.14 |
| | | 07/16/2018 | 07/16/2018 | 07/01/2018 | Generated | 804 - Late Charge Assessed | $55.01 | $164,526.14 |

PIONEER BANK

Page 4

History

871525 - Cameron William Shifflett -
Consumer RE - FSMP

8/22/2022

| | | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| | T | 07/13/2018 | 07/13/2018 | 06/01/2018 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $164,526.14 |
| | T | 07/13/2018 | 07/13/2018 | 06/01/2018 | Captured from POD | 40 - Late Charge Payment (-) | ($0.51) | $164,751.28 |
| | | 06/18/2018 | 06/18/2018 | 06/01/2018 | Generated | 804 - Late Charge Assessed | $54.27 | $164,751.28 |
| | T | 06/13/2018 | 06/13/2018 | 05/01/2018 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $164,751.28 |
| | 🏠 | 06/11/2018 | 06/11/2018 | 05/01/2018 | Escrow Distribution | 931 - Decrease escrow balance 1 | $827.00 | $164,975.50 |
| | | 05/16/2018 | 05/16/2018 | 05/01/2018 | Generated | 804 - Late Charge Assessed | $54.27 | $164,975.50 |
| | 🏠 | 05/14/2018 | 05/14/2018 | 05/01/2018 | Escrow Distribution | 932 - Decrease escrow balance 2 | $655.27 | $164,975.50 |
| | T | 05/14/2018 | 05/14/2018 | 04/01/2018 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $164,975.50 |
| | | 04/16/2018 | 04/16/2018 | 04/01/2018 | Generated | 804 - Late Charge Assessed | $54.27 | $165,198.79 |
| | T | 04/02/2018 | 04/02/2018 | 03/01/2018 | Captured from POD | 56 - Regular Payment | ($270.98) | $165,198.79 |
| | T | 03/19/2018 | 03/19/2018 | 03/01/2018 | Captured from POD | 56 - Regular Payment | ($814.51) | $165,421.17 |
| | T | 03/19/2018 | 03/19/2018 | 02/01/2018 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $165,421.17 |
| | | 03/16/2018 | 03/16/2018 | 02/01/2018 | Generated | 804 - Late Charge Assessed | $54.27 | $165,642.63 |
| | T | 02/20/2018 | 02/20/2018 | 01/01/2018 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $165,642.63 |
| | T | 02/20/2018 | 02/20/2018 | 01/01/2018 | Captured from POD | 40 - Late Charge Payment (-) | ($0.51) | $165,863.18 |
| | | 02/16/2018 | 02/16/2018 | 01/01/2018 | Generated | 804 - Late Charge Assessed | $54.27 | $165,863.18 |
| | | 01/16/2018 | 01/16/2018 | 01/01/2018 | Generated | 804 - Late Charge Assessed | $54.27 | $165,863.18 |
| | T | 12/27/2017 | 12/27/2017 | 12/01/2017 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $165,863.18 |
| | | 12/18/2017 | 12/18/2017 | 12/01/2017 | Generated | 804 - Late Charge Assessed | $54.27 | $166,082.83 |
| | T | 11/27/2017 | 11/27/2017 | 11/01/2017 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $166,082.83 |
| | | 11/16/2017 | 11/16/2017 | 11/01/2017 | Generated | 804 - Late Charge Assessed | $54.27 | $166,301.58 |
| | T | 11/13/2017 | 11/13/2017 | 10/01/2017 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $166,301.58 |
| | T | 11/13/2017 | 11/13/2017 | 10/01/2017 | Captured from POD | 40 - Late Charge Payment (-) | ($14.51) | $166,519.43 |
| | 🏠 | 11/09/2017 | 11/09/2017 | 10/01/2017 | Escrow Distribution | 932 - Decrease escrow balance 2 | $655.27 | $166,519.43 |
| | | 10/16/2017 | 10/16/2017 | 10/01/2017 | Generated | 804 - Late Charge Assessed | $54.27 | $166,519.43 |
| | T | 10/05/2017 | 10/05/2017 | 09/01/2017 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $166,519.43 |
| | | 09/18/2017 | 09/18/2017 | 09/01/2017 | Generated | 804 - Late Charge Assessed | $54.27 | $166,736.38 |
| | T | 09/05/2017 | 09/05/2017 | 08/01/2017 | Captured from POD | 56 - Regular Payment | ($1,085.49) | $166,736.38 |
| | T | 08/21/2017 | 08/21/2017 | 07/01/2017 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $166,952.44 |
| | | 08/16/2017 | 08/16/2017 | 07/01/2017 | Generated | 804 - Late Charge Assessed | $54.27 | $167,167.61 |
| | T | 07/24/2017 | 07/24/2017 | 06/01/2017 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $167,167.61 |
| | | 07/17/2017 | 07/17/2017 | 06/01/2017 | Generated | 804 - Late Charge Assessed | $54.27 | $167,381.90 |
| | T | 06/26/2017 | 06/26/2017 | 06/01/2017 | Captured from POD | 59 - Principal Only (-) No Affect Due Date | ($4.26) | $167,381.90 |
| | T | 06/26/2017 | 06/26/2017 | 05/01/2017 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $167,386.16 |
| | | 06/16/2017 | 06/16/2017 | 05/01/2017 | Generated | 804 - Late Charge Assessed | $53.29 | $167,599.55 |
| | 🏠 | 06/12/2017 | 06/12/2017 | 05/01/2017 | Escrow Distribution | 931 - Decrease escrow balance 1 | $660.00 | $167,599.55 |
| | | 05/16/2017 | 05/16/2017 | 05/01/2017 | Generated | 804 - Late Charge Assessed | $53.29 | $167,599.55 |

871525 - Cameron William Shifflett -
Consumer RE - FSMP

8/22/2022

| | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| T | 05/15/2017 | 05/15/2017 | 04/01/2017 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $167,599.55 |
| T | 05/15/2017 | 05/15/2017 | 04/01/2017 | Captured from POD | 40 - Late Charge Payment (-) | ($3.26) | $167,812.07 |
| | 05/03/2017 | 05/03/2017 | 04/01/2017 | Escrow Distribution | 932 - Decrease escrow balance 2 | $655.27 | $167,812.07 |
| | 04/17/2017 | 04/17/2017 | 04/01/2017 | Generated | 804 - Late Charge Assessed | $53.29 | $167,812.07 |
| T | 04/14/2017 | 04/14/2017 | 03/01/2017 | Captured from POD | 56 - Regular Payment | ($100.00) | $167,812.07 |
| T | 04/03/2017 | 04/03/2017 | 03/01/2017 | Captured from POD | 56 - Regular Payment | ($970.00) | $168,023.71 |
| | 03/16/2017 | 03/16/2017 | 03/01/2017 | Generated | 804 - Late Charge Assessed | $53.29 | $168,023.71 |
| T | 03/06/2017 | 03/06/2017 | 02/01/2017 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $168,023.71 |
| T | 03/06/2017 | 03/06/2017 | 02/01/2017 | Captured from POD | 40 - Late Charge Payment (-) | ($34.33) | $168,234.48 |
| | 02/16/2017 | 02/16/2017 | 02/01/2017 | Generated | 804 - Late Charge Assessed | $53.29 | $168,234.48 |
| T | 01/11/2017 | 01/11/2017 | 02/01/2017 | Captured from POD | 59 - Principal Only (-) No Affect Due Date | ($0.26) | $168,234.48 |
| T | 01/11/2017 | 01/11/2017 | 01/01/2017 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $168,234.74 |
| T | 12/12/2016 | 12/12/2016 | 12/01/2016 | Captured from POD | 56 - Regular Payment | ($1,080.00) | $168,444.65 |
| | 11/17/2016 | 11/17/2016 | 12/01/2016 | Escrow Distribution | 932 - Decrease escrow balance 2 | $644.42 | $168,667.89 |
| T | 11/15/2016 | 11/15/2016 | 12/01/2016 | Captured from POD | 59 - Principal Only (-) No Affect Due Date | ($0.26) | $168,667.89 |
| T | 11/15/2016 | 11/15/2016 | 11/01/2016 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $168,668.15 |
| T | 10/17/2016 | 10/17/2016 | 11/01/2016 | Captured from POD | 59 - Principal Only (-) No Affect Due Date | ($4.26) | $168,876.28 |
| T | 10/17/2016 | 10/17/2016 | 10/01/2016 | Captured from POD | 56 - Regular Payment | ($1,065.74) | $168,880.54 |
| | 09/19/2016 | 09/16/2016 | 10/01/2016 | Manually Keyed-No Split | 43 - Advance/Balance Increase (+) | $0.01 | $169,087.79 |
| T | 09/16/2016 | 09/16/2016 | 09/01/2016 | Captured from POD | 56 - Regular Payment | ($1,065.75) | $169,087.78 |
| T | 08/05/2016 | 08/05/2016 | 08/01/2016 | Captured from POD | 56 - Regular Payment | ($1,066.00) | $169,294.19 |
| | 07/13/2016 | 06/28/2016 | 08/01/2016 | Manually Keyed-No Split | 203 - Increase Escrow County Taxes 2 (+) | ($214.82) | $169,500.00 |
| | 07/13/2016 | 06/28/2016 | 08/01/2016 | Manually Keyed-No Split | 201 - Increase Escrow Insurance 1 (+) | ($107.10) | $169,500.00 |
| | 07/13/2016 | 06/28/2016 | 08/01/2016 | Manually Keyed-No Split | 41 - Interest Only (-) No Affect on Due Date | ($67.65) | $169,500.00 |
| | 07/13/2016 | 06/28/2016 | 08/01/2016 | Manually Keyed-No Split | 43 - Advance/Balance Increase (+) | $169,500.00 | $169,500.00 |
| | 07/13/2016 | 06/28/2016 | 08/01/2016 | Generated | 921 - Effective Date Debit Interest Adj. | $349.59 | $0.00 |
| | 06/28/2016 | 06/28/2016 | | Generated | 889 - Interest Rate Change | | $0.00 |